**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRS INSURANCE GROUP, INC., | ) | Case Nos. 00-4070 (MFW) |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| SEAN C. LOGAN, the Chapter 11 | ) | |
| Trustee of PRS INSURANCE | ) | |
| GROUP, INC., et al., | ) | Adv. Proc. No. 05-50818 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDIT GENERAL INSURANCE | ) | |
| COMPANY and CREDIT GENERAL | ) | |
| INDEMNITY COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion filed by the Liquidator of
Credit General Insurance Company and Credit General Indemnity
Company (collectively "CGIC") to Dismiss or Stay the above
adversary action.  The issue presented is whether the McCarran-
Ferguson Act prevents this Court from exercising jurisdiction
over the chapter 11 Trustee's suit which seeks a determination
that CGIC is liable to the estate for preferential or fraudulent
transfers, solely as an objection to the proof of claim filed by
CGIC.  For the reasons stated below, the Court will deny the

_____

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

Motion.

I.    <u>BACKGROUND</u>

    In June 2000, the Ohio Department of Insurance ("ODI")
placed CGIC under supervision.  CGIC was one of the principal
subsidiaries of PRS Insurance Group, Inc. ("PRS"), which served
as a holding company for insurance related businesses.  Because
PRS was not an Ohio insurance company, it was not under direct
supervision of the ODI.  Nevertheless, for fear of the potential
consequences of non-cooperation, PRS agreed to submit to the
supervision orders of the ODI.

    At first, the ODI attempted to sell CGIC.  To enhance CGIC's
marketability, the ODI engineered the transfer of approximately
$20 million in assets from PRS to CGIC for little or no
consideration.  When no buyer was forthcoming, the ODI moved for
the liquidation of CGIC, which is currently under a Final Order
of Liquidation in the Court of Common Pleas, Franklin County,
Ohio ("the Ohio State Court").  Pursuant to that Order, PRS is
prohibited from commencing a civil action against CGIC to recover
the $20 million in transfers.  PRS did, however, file a proof of
claim in the Ohio liquidation proceeding.  To date, there has
been no final adjudication of that claim.

    On October 31, 2000, an involuntary chapter 7 petition was
filed against PRS.  On January 19, 2001, the case was converted

to chapter 11, and on June 1, 2001, the Court appointed Sean C. Logan ("the Trustee") as the chapter 11 trustee.

On April 30, 2002, CGIC filed a proof of claim in PRS's bankruptcy case for $45 million, largely based on inter-company receivables owed by PRS.  The Trustee objected to CGIC's proof of claim on January 22, 2003.

At the same time, the Trustee filed an adversary proceeding against CGIC for avoidance of fraudulent and preferential transfers, turnover, and breach of fiduciary duties ("the First Action").  On motion of CGIC, the Court dismissed the First Action on June 11, 2003, concluding that the Trustee's claims for affirmative recovery were reverse preempted under the McCarran-Ferguson Act.  Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.), 294 B.R. 609, 612-13 (Bankr. D. Del. 2003).  The District Court affirmed that decision.  Logan v. Credit General Ins. Co., No. 04-319-SLR (D. Del. March 31, 2005).

On April 11, 2005, the Trustee filed the instant adversary proceeding ("the Second Action"), asserting the same causes of action as the First Action.[2]  This time, however, the Trustee is not seeking any "affirmative" recovery, but merely raises the action as a "defense" under section 502(d) to the allowance of CGIC's claim.

---

[2]  The Trustee has also filed a separate adversary proceeding seeking equitable subordination of CGIC's claim under section 510(c) of the Bankruptcy Code.

II.   <u>DISCUSSION</u>

CGIC seeks to dismiss the Trustee's complaint arguing that the McCarran-Ferguson Act precludes this Court from exercising jurisdiction over the Second Action.  Moreover, even if this Court has jurisdiction, CGIC argues that it should abstain from hearing the dispute or stay the proceedings in deference to CGIC's Ohio liquidation proceeding.

A.   <u>Standard of Review</u>

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." <u>Koninklijke Numico N.V. v. Keb Enters. LP</u>, No. 02-1529, 2003 U.S. Dist. LEXIS 5135, at *2 (D. Del. March 31, 2003).  In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the very power of the court to hear the case is at issue and a court is free to weigh the evidence to satisfy itself that it has that power.  <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1021 (3d Cir. 1997).

B.   <u>Jurisdiction Generally</u>

This Court has exclusive jurisdiction over property of the estate and has jurisdiction to decide what is property of the estate.  <u>See</u> 28 U.S.C. §§ 1334(e) & 157(b)(2)(A), (E), (O).  The Court also has jurisdiction over preference and fraudulent conveyance actions.  28 U.S.C. § 157(b)(2)(F) & (H).

-4-

CGIC asserts, however, that the Court's exercise of subject matter jurisdiction in this adversary proceeding is "reverse preempted" by the McCarran-Ferguson Act.  <u>See</u> 15 U.S.C. §§ 1011-1015.

C.   <u>Reverse Preemption</u>

The McCarran-Ferguson Act provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).  A federal statute is reverse preempted under the McCarran-Ferguson Act if (1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the federal statute would invalidate, impair, or supersede the state statute.  <u>See, e.g.</u>, <u>Wagner v. Amwest Ins. Group, Inc. (In re Amwest Ins. Group, Inc.)</u>, 285 B.R. 447, 451 (Bankr. C.D. Cal. 2002).

This Court has already addressed the application of the above factors to the Trustee's stated causes of action – to the extent that the Trustee sought affirmative relief from CGIC – when it dismissed the First Action.  <u>Logan</u>, 294 B.R. at 612-13. In that opinion, the Court found that (1) the Bankruptcy Code does not specifically relate to the business of insurance; (2)

the Ohio statute providing for the liquidation of insurance
companies was enacted for the purpose of regulating the business
of insurance; and (3) the bankruptcy proceeding impaired the Ohio
statute because, inter alia, a decision rendered in this Court
may upset the priority and timing of distributions from the Ohio
liquidation proceeding by requiring the return to the estate of
funds improperly transferred to CGIC.  Id.

     1.  Issue Preclusion

The Trustee argues that issue preclusion prevents CGIC from
asserting that the McCarran-Ferguson Act preempts this Court's
jurisdiction to consider the Second Action.  The Trustee relies
on statements made by the District Court in affirming this
Court's dismissal of the First Action.  Specifically, the
District Court stated that "nothing in the McCarran-Ferguson Act
or the Ohio Liquidation Act precludes the Trustee from asserting
defenses in the bankruptcy proceeding pursuant to 11 U.S.C. §
502(d). . . ."  Logan, No. 04-319-SLR, slip op. at 6.

For issue preclusion to apply, however, the issue decided
must be essential to the judgment.  Arizona v. California, 530
U.S. 392, 414 (2000) ("It is the general rule that issue
preclusion attaches only '[w]hen an issue of fact or law is
actually litigated and determined by a valid and final judgment,
and the determination is essential to the judgment'.") (citation
omitted).  The District Court's statement was not essential to

the judgment rendered, because the issue before the District Court was whether the Trustee's request for "affirmative" relief was preempted by the McCarran-Ferguson Act.  Therefore, issue preclusion does not prevent CGIC from arguing that the Trustee's request for "defensive" relief is also preempted by the McCarran-Ferguson Act.

           2.   <u>Filing a Proof of Claim</u>

     The Trustee argues that reverse preemption is not applicable in this case because CGIC voluntarily subjected itself to the jurisdiction of this Court to decide issues related to its proof of claim by the mere act of filing that claim in this bankruptcy case.

     When a creditor files a proof of claim, it subjects itself to the jurisdiction of the Bankruptcy Court to hear all matters related to the allowance of that claim.  <u>Gardner v. New Jersey</u>, 329 U.S. 565, 573-74 (1947) (state waived sovereign immunity by filing a proof of claim in the bankruptcy case).  <u>See also</u>, <u>Travellers Int'l AG v. Robinson</u>, 982 F.2d 96, 100 (3d Cir. 1992) ("[T]he equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim.").  Jurisdiction to consider a proof of claim submitted by a creditor includes jurisdiction to determine all defenses to that proof of claim, including affirmative counterclaims that may be set off against that claim.  For example, when a governmental

-7-

unit files a proof of claim, sovereign immunity is deemed to be waived "with respect to a claim <u>against</u> such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."  11 U.S.C. § 106(b) (emphasis added). <u>See also</u> <u>Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.)</u>, 361 F.3d 760, 769-70 (2d Cir.) (holding that the filing of a proof of claim by a governmental unit was a waiver of sovereign immunity with respect to permissive, as well as compulsory, counterclaims so long as they are capped by the amount of the claim), <u>cert. denied</u>, 125 S. Ct. 408 (2004).  As the <u>Ossen</u> Court stated: "[O]nce a state has voluntarily submitted itself to the court's jurisdiction by filing a proof of claim with a view to reaping financial benefit, there is no longer any danger that the state will be subjected to the 'indignity' of being haled into court."  361 F.3d at 769.

Specifically, jurisdiction arising from the filing of a proof of claim includes jurisdiction over defenses to that claim which are raised under section 502(d).  <u>See, e.g.</u>, <u>Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. Pub. Util. Comm'n of California (In re 360networks (USA) Inc.)</u>, 316 B.R. 797, 805 n.11 (Bankr. S.D.N.Y. 2004) ("[T]he application of § 502(d) to disallow a claim of a California instrumentality would be entirely consistent with the spirit and rationale" of cases

holding that a state waives sovereign immunity by filing a proof of claim); Massachusetts Air Conditioning & Heating Corp. v. United States (In re Massachusetts Air Conditioning & Heating Corp.), No. 93-11850, 1994 Bankr. LEXIS 1560, at *6 (Bankr. D. Mass. Sept. 23, 1994) ("A creditor's failure to remit a preferential transfer is thus a complete defense to that creditor's claim against the bankruptcy estate [under section 502(d)].  Certainly the United States must be deemed to have waived its immunity as to the issues raised by its own claim.").

Consequently, the Court concludes that it has jurisdiction over the Second Action because CGIC waived any barrier to this Court considering the trustee's objections to its proof of claim, including the affirmative counterclaims raised by the Second Action.

        3.    Nature of Section 502(d)

CGIC argues, nonetheless, that given the peculiar nature of a section 502(d) objection to claim,[3] the Trustee's objection is still subject to reverse preemption.  CGIC argues that a section 502(d) objection is different from a defense to the underlying merits of the claim because it requires a finding that CGIC is

_____

    [3]  Section 502(d) of the Bankruptcy Code provides that "the court shall disallow any claim of any entity from which property is recoverable . . . or that is a transferee of a transfer avoidable under section . . . 547, 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable. . . ."  11 U.S.C. § 502(d).

liable for an avoidable transfer under the Bankruptcy Code.

The Court agrees that an objection under section 502(d) is not an attack on the merits of the claim. Rather the purpose of section 502(d) is to ensure compliance with judicial orders by totally disallowing any claim filed by a creditor that is liable for a preferential or fraudulent transfer – unless the creditor first pays the amount due to the estate. E.g., Holloway v. IRS (In re Odom Antennas, Inc.), 340 F.3d 705, 708 (8th Cir. 2003); AmeriServe Food Distrib., Inc. v. Transmed Foods, Inc. (In re Ameriserve Food Distrib., Inc.), 315 B.R. 24, 35 (Bankr. D. Del. 2004).

In order to sustain a section 502(d) defense to a claim, the debtor must first establish that the creditor is liable for an avoidable transfer. See Odom Antennas, 340 F.3d at 708. Consequently, CGIC asserts that the McCarran-Ferguson Act preempts the Trustee's section 502(d) defense because the result reached is the same as if the Trustee were seeking affirmative recovery. This is not correct. If the Trustee were seeking affirmative relief, he would be able to seek to collect on any judgment entered in his favor. The Trustee does not seek payment of the avoidable transfers in this forum; he seeks only to prevent the payment of CGIC's claims.

Therefore, the injunction in the Ohio proceeding which prohibits the Trustee from seeking to exercise control over any

-10-

property within the Ohio State Court's jurisdiction is not being
violated by the prosecution of the Second Action.  See, e.g., In
re Metiom, Inc., 301 B.R. 634, 638-39 (Bankr. S.D.N.Y. 2003)
(holding that the automatic stay did not apply to an objection
under section 502(d) where the trustee waived any affirmative
relief because the trustee was not attempting to recover a claim
against the creditor/debtor, to obtain any property from the
creditor/debtor's estate, or to exercise control over the
creditor/debtor's estate property).

     Further, prosecution of the Second Action will not have the
same adverse impact on the Ohio liquidation proceeding that the
First Action would have had.  In the Second Action, the Trustee
is not affirmatively seeking any relief against CGIC and is not
attempting to control the assets of CGIC by asserting affirmative
claims.  Even if the Trustee prevails in the Second Action, he
will not seek satisfaction of any judgment from CGIC or from
assets of CGIC, other than through the claim he filed in CGIC's
proceeding.

     CGIC argues, however, that if the Trustee is successful in
the Second Action, CGIC will be prevented from recovering
anything on its $45 million claim in this proceeding until it
pays its potential liability on the Trustee's $20 million
avoidance action.  This, it argues, would result in PRS
effectively being paid in full on its claim ahead of other

creditors in the Ohio liquidation proceeding.  Again, this is not
correct.  CGIC will not have to pay the judgment if the Trustee
prevails in the Second Action (although the Trustee would have
the right to assert the judgment as a claim in the Ohio
proceeding).  If CGIC elects not to pay the Trustee the amount of
any avoided transfer, however, its claim will be eliminated in
this case and it will not be entitled to any distribution from
this estate.

In analogous circumstances, when two entities are under the
protection of the Bankruptcy Code or a state's insolvency laws,
Courts have applied section 502(d) in a manner consistent with
the recoveries expected in the two cases.  In such a case, the
amount of "liability" that the insolvent preference defendant
must pay under section 502(d) is not the face amount of the
judgment – but only the percentage payout that its other
creditors will receive in its case.  In re Shared Technologies
Cellular, Inc., 293 B.R. 89, 97 (D. Conn. 2003).

CGIC argues, however, that under the Shared Technologies
holding, the Ohio State Court must first determine what
percentage will be paid to CGIC's creditors before this Court can
disallow CGIC's claim.  The Court disagrees.  A finding in this
case that CGIC is liable to the estate for any amount is
sufficient to prevent a payout on CGIC's claim, pending a
determination by the Ohio State Court of the percentage creditors

-12-

will receive in CGIC's proceeding.   11 U.S.C. § 502(d).   Once PRS
receives its pro rata recovery in the Ohio proceeding, CGIC will
be entitled to allowance and payment of any claim it has against
PRS in this case.

CGIC also argues that issue preclusion means that any
decision by this Court would establish the amount of the
Trustee's proof of claim in the Ohio liquidation proceeding and
thereby rend power away from the Ohio State Court.   The Court is
not convinced that this is a sufficient basis for finding that
this adversary proceeding interferes with the Ohio liquidation.
This Court has jurisdiction over preference and fraudulent
conveyance actions brought under the Bankruptcy Code; the Ohio
State Court does not.   28 U.S.C. §§ 1334(a) (granting the
district courts exclusive jurisdiction over all cases arising
under title 11), 28 U.S.C. § 157(b)(2)(F) & (H) (referring
preference and fraudulent conveyance actions to the jurisdiction
of the Bankruptcy Court).   Therefore, by deciding these actions,
the Court is not interfering with the jurisdiction of the Ohio
State Court, but is merely exercising its exclusive jurisdiction.
See, e.g., Colorado River Water Conservation Dist. v. United
States, 424 U.S. 800, 817 (1976) (noting "the virtually
unflagging obligation of the federal courts to exercise the
jurisdiction given them" by Congress).

CGIC argues that litigation in this Court would destroy the efficiency and economy of the Ohio proceeding.  The fact that claim or issue preclusion might apply between the two fora, however, enhances efficiency and judicial economy rather than destroys it.  E.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, . . . promot[es] judicial economy by preventing needless litigation.").  Further, there is relatively little difference in cost to CGIC to litigate the Trustee's objection to its proof of claim in this Court versus the Ohio State Court (which cannot even hear all the issues).  CGIC chose this forum by filing a proof of claim; it cannot complain if it is called to litigate its claim here.

Therefore, the Court concludes that the Second Action is not reverse preempted by the McCarran-Ferguson Act because it seeks only to establish a defense to the claim filed by CGIC in this case.

D.   Abstention

Alternatively, CGIC asks this Court to abstain from hearing the Second Action.  The Trustee argues that abstention is not appropriate because CGIC filed a proof of claim in the bankruptcy case and, as a practical matter, no proceeding exists elsewhere to deal with CGIC's claims against the Trustee or the Trustee's defenses.

-14-

1. <u>Younger Abstention</u>

CGIC argues that abstention is warranted under the doctrine articulated by the Supreme Court in the case of <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Abstention based on <u>Younger</u> "is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." <u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 408 (3d Cir. 2005).

Abstention in this case under the <u>Younger</u> doctrine is not appropriate because the Ohio liquidation proceeding does not afford an adequate opportunity for the Trustee to raise his bankruptcy causes of action. As noted above, the State Court does not have jurisdiction to adjudicate those causes of action because they arise under the Bankruptcy Code. 28 U.S.C. § 1334(a). "[A]bstention is inappropriate in cases in which federal courts have exclusive jurisdiction over at least a portion of the claims presented." <u>Chiropractic Am. v. LaVecchia</u>, 180 F.3d 99, 108 (3d Cir. 1999) (citation omitted). <u>See also Baggett v. Dep't of Professional Regulation, Bd. of Pilot Comm'rs.</u>, 717 F.2d 521, 524 (11th Cir. 1983) (holding that state "has no interest in having her administrative agencies prosecute disciplinary complaints that the administrative agency has no

jurisdiction to initiate.").

The possibility that other courts may have exclusive jurisdiction over issues which relate to insurance liquidation proceedings is apparently recognized by the relevant Ohio statute which requires that the Ohio State Court stay its proceedings if it finds that "any action should as a matter of substantial justice be tried in a forum outside [Ohio]." Ohio Rev. Code Ann. § 3902.04(D).

2.   Burford Abstention

CGIC also argues that abstention is warranted by the case of Burford v. Sun Oil Co., 319 U.S. 315 (1943). Abstention under Burford is appropriate "when questions of state law in which the state has expressed a desire to establish a coherent policy on a matter of substantial public concern are raised." NYLife Distribs. v. The Adherence Group, Inc., 72 F.3d 371, 376 n.8 (3d Cir. 1995).

Abstention under Burford is not appropriate, however, if the relief sought is legal in nature and not equitable. E.g., Feige v. Sechrest, 90 F.3d 846, 850 (3d Cir. 1996) ("[A] district court may not abstain under Burford and dismiss the complaint when the remedy sought is legal rather than discretionary."). In this case, the relief sought is legal, not equitable. E.g., Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 43 (1989) ("[A]ctions to recover preferential or fraudulent transfers were

-16-

often brought at law in late 18th-century England.").

CGIC argues that the Trustee's section 502(d) objection –
the purpose of which is to enforce court orders – is equitable
and is subject to a Burford abstention.  The Court disagrees.
Although section 502(d) is the umbrella under which the Trustee
is proceeding, that does not change the fundamental nature of the
underlying actions from legal to equitable.

Further, "Burford abstention is precluded when a state court
has no jurisdiction over a plaintiff's direct . . . claims."
Riley v. Simmons, 45 F.3d 764, 777 (3d Cir. 1995).  Because, as
noted above, the Ohio State Court does not have jurisdiction over
the preference and fraudulent conveyance claims asserted by the
Trustee (which are legal not equitable), the Court concludes that
Burford abstention is not warranted.

G.   Stay of Proceedings

CGIC contends that the Court should stay this adversary
proceeding in favor of litigation in the Ohio State Court.  CGIC
argues that it should not have to defend claims regarding the
same assets and transfers in two different fora, which would
drain the resources of the CGIC liquidation estate.  It argues
that allowing the Second Action to proceed also risks the
possibility of inconsistent results.

A stay of proceedings might be warranted apart from
considerations of proper constitutional adjudication or regard

for federal/state relations when, for example, the basis is one
of wise judicial administration.  E.g., Colorado River, 424 U.S.
at 817 ("These principles rest on considerations of '[w]ise
judicial administration, giving regard to conservation of
judicial resources and comprehensive disposition of
litigation'.") (citation omitted).  Given the obligation of the
federal courts to exercise the jurisdiction given them, however,
"the circumstances permitting the dismissal of a federal suit due
to the presence of a concurrent state proceeding for reasons of
wise judicial administration are considerably more limited than
the circumstances appropriate for abstention."  Id. at 818.  For
the same reasons that abstention is not appropriate, a stay of
these proceedings is not warranted.


III. CONCLUSION

        For the reasons set forth above, the Court will deny the
Motion of CGIC to dismiss the Second Action.

        An appropriate order is attached.


                                    BY THE COURT:



Dated: September 23, 2005     _____
                              Mary F. Walrath
                              United States Bankruptcy Judge